IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HART DAVIS HART AUCTION CO. LLC and HART DAVIS HART WINE CO. LLC<br><br>Plaintiffs,<br><br>v.<br><br>MORIAH SPICER<br><br>Defendant. | ) | Case No. |

## COMPLAINT

Hart Davis Hart Auction Co. LLC ("HDH Auction Co.") and Hart Davis Hart Wine Co. LLC ("HDH Wine Co.") (collectively, "HDH" or "Plaintiffs"), hereby bring this civil action against Defendant Moriah Spicer ("Spicer"), seeking damages and equitable relief, and aver as follows:

## INTRODUCTION

1. HDH Auction Co. is the premier auction house for fine and rare wines in the United States. HDH Auction Co. also auctions spirits, while HDH Wine Co. sells wine to consumers as a retailer.

2. HDH's business is highly competitive. HDH thus devotes meaningful resources and time to developing long-lasting client relationships and derives independent economic value from the secrecy of its trade secrets and confidential information. Accordingly, HDH takes various steps to protect the identity of its clients, as well as their wine and spirits preferences and buying history, from HDH's robust competition.

3. Defendant Moriah Spicer was a Senior Vice President at HDH who had extensive contact with HDH's clients until the termination of her employment on December 19, 2025. Spicer

worked closely with HDH's clients to learn their wine and spirts preferences, offer them retail wines for purchase, alert them to wines and spirits being sold at auction, and offer them the opportunity to sell their wine and/or spirits collections at an HDH auction, among other things. As a condition of her employment, Spicer agreed to safeguard HDH's trade secrets and confidential information—including customer information and buying/selling history—from disclosure to third parties and further agreed to certain non-solicitation and non-competition restrictions for one year following the end of her HDH employment.

4. After Spicer's employment with HDH ended, she informed HDH that she had accepted a position with another wine auction house/retailer and that she would "be starting after my non-compete and non-solicitation have expired," which is not until December 18, 2026. Spicer, however, began working with her new employer to misappropriate HDH's trade secrets and confidential information by no later than July 29, 2026, when one of HDH's clients inadvertently forwarded an email chain between the client and Spicer's prospective employer to Spicer's HDH email address. The email chain revealed that Spicer asked her new employer to contact HDH's client because he was "looking for some special champagnes." Spicer's new employer then sent HDH's client a list of 80 fine and rare champagnes for sale, some of which were priced as high as $11,995 per bottle.

5. HDH thus brings this action against Spicer for the misappropriation of HDH's trade secrets and confidential information, and for breach of contract.

## PARTIES

6. Hart Davis Hart Auction Co. LLC, formerly known as SC Honor LLC, is a Delaware limited liability company. Its principal place of business is 250 Centerpoint Boulevard New Castle, Delaware 19720.

7. Hart Davis Hart Wine Co. LLC, formerly known as SHU143, LLC, is a Delaware limited liability company. Its principal place of business is 306 SE Ash Street, Suite Z, Portland, Oregon 97214.

8. Defendant Moriah Spicer, upon information and belief, resides in Cook County, Illinois. Spicer was employed by HDH Wine Co. from in or about November 2009 to December 19, 2025.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the violation of a federal law, the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.

10. This Court also has supplemental jurisdiction over the asserted state law claims under 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

11. This Court has personal jurisdiction over Spicer because she resides in this District. Plaintiffs' claims arise out of and relate to Spicer's contacts with this forum.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because Spicer resides in this District and committed the wrongful acts alleged in the Complaint within this District.

13. This Court has personal jurisdiction over Spicer and venue is also proper for the additional reason that Spicer consented to the federal and state courts in Cook County, Illinois as the exclusive jurisdiction for any lawsuits arising out of the Confidentiality, Non-Competition and Non-Solicitation Agreement that she and HDH signed. Spicer further waived any objection to this choice of venue and waived any claim that any lawsuit brought in Cook County, Illinois, has been brought in an inappropriate forum.

## FACTUAL BACKGROUND

### I. HDH's Wine and Spirits Businesses

14. HDH is in the business of selling fine and rare wines to clients throughout the United States and abroad both through live auctions held in New Castle, Delaware and through retail sales direct to consumers from Portland, Oregon. HDH also sells fine and rare spirits through live auctions.

15. Both of HDH's business lines—auctions and retail sales—are highly competitive. HDH's auction competitors conduct fine and rare wine auctions from Delaware, New York, California, Illinois, and overseas locations. HDH's auction competitors compete with HDH for both consignors and bidders. Competition for retail wine sales is also domestic and international.

16. To maintain its competitive advantage, HDH develops close relationships with its clients. That entails learning their wine and spirts preferences so that HDH can help them both buy and sell wines and spirits at auction and buy retail wine offerings. Knowing what a client likes to collect and drink helps HDH to tailor retail offerings to the client and allows HDH to highlight specific auction lots that are in line with the client's tastes and preferences.. Knowing what is in a client's cellar, and helping them build it, is also valuable to HDH because it allows HDH to recommend auction selling strategies, among other things.

17. HDH receives substantial benefit from its investment and development of its confidential information, including but not limited to its trade secrets, in particular through HDH's client relationships.

18. HDH derives independent economic value from the secrecy of its trade secrets and confidential information, including but not limited to its client contacts, client preferences, and

clients' buying/selling history. HDH has invested substantial resources to develop this information and keep it confidential.

19. A competitor with access to this information can use it to sell retail wine to HDH's client to encourage the client to bid in a competitor's auction, and consign wine and/or spirits to a competitor's auction, all to HDH's detriment.

## II. Spicer's Employment with HDH, the Termination of Her Employment, and Related Employment and Post Employment Agreements

20. Spicer was employed by HDH Wine Co. initially as a Consignment Assistant starting in or about November 2009. Spicer was subsequently promoted, ultimately achieving the title of Senior Vice President – Consignment Advisor before the termination of her employment on December 19, 2025.

21. Throughout her HDH employment, one of Spicer's primary responsibilities was to manage, develop, and grow HDH's client relationships. That responsibility included, among other things, learning HDH's clients' wine and spirits preferences so that HDH could present the client with the appropriate auction and/or retail buying opportunities for their tastes. Spicer was also responsible for developing relationships with clients so that they might consign their wine and/or spirits collections (or a portion thereof) in one of HDH's live auctions when the client was ready to sell. HDH assigned numerous clients to Spicer during her employment with HDH.

22. As a condition of her employment, Spicer and HDH executed a Confidentiality and Non-Solicitation Agreement. On August 4, 2016, the parties executed a First Amendment to that agreement, and on February 6, 2017, the parties executed a Second Amendment to the agreement which changed the name of the agreement to "Confidentiality, Non-Competition and Non-Solicitation Agreement." Spicer received adequate and sufficient consideration for entering into the Confidentiality and Non-Solicitation Agreement and subsequent amendments, and the

promises and covenants contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement are supported by adequate and sufficient consideration.

23. In the Confidentiality, Non-Competition and Non-Solicitation Agreement, Spicer agreed that she "will not, without HDH's prior permission, directly or indirectly, utilize for any purpose other than for a legitimate business purpose solely on behalf of HDH, or directly or indirectly, disclose to anyone outside of HDH, either during or after Employee's employment or relationship with HDH ends, HDH's Confidential Information, as long as such matters remain Confidential Information."

24. The Confidentiality, Non-Competition and Non-Solicitation Agreement defines "HDH's Confidential Information" as follows, in relevant part:

a. "HDH's trade secrets as defined under Illinois law, as well as any other information or material which is not generally known to the public, and which [] is generated, collected by or utilized in the operations of HDH's business and relates to the actual or anticipated business, research or development of HDH or HDH's actual or prospective Customers (as defined herein) . . ."

b. "Examples of Confidential Information include, but are not limited to, HDH financial data, business or strategic plans, marketing and sales information or plans, and other plans relating to the business of HDH; **proprietary lists of actual or potential Customers** or suppliers; innovations and systems relating to the design, development, production, sales and delivery of HDH's products and services; **Customer information**, including, without limitation, the HDH Wine Management System (WMS) database, **Customer buying, selling, and collection history**, mailing lists, Customer lists, rolodexes, and Customer files, supplier lists, **non-public information concerning present, past or potential Customers**, suppliers and employees." (Emphasis added).

c. "Information need not qualify as a trade secret to be protected as Confidential Information under this Agreement, and the authorized and controlled disclosure of Confidential Information to authorized parties by HDH in the pursuit of its business will not cause the information to lose its protected status under this Agreement."

25. Spicer "acknowledge[d]" in the Confidentiality, Non-Competition and Non-Solicitation Agreement that HDH's "Confidential Information constitutes a valuable, special, and unique asset used by HDH in its business to obtain a competitive advantage over its competitors." She "acknowledge[d]" that "protection of such Confidential Information against unauthorized disclosure and use is of critical importance to HDH in maintaining its competitive position." She agreed "that, in the event that Employee's employment with HDH is terminated for any reason, Employee shall immediately return all of HDH's property, including HDH's Confidential Information, documents, materials, or copies in any media, including paper or electronic form, and shall not retain in Employee's possession after Employee's termination any property, including any property containing HDH's Confidential Information."

26. Spicer additionally represented in the Confidentiality, Non-Competition and Non-Solicitation Agreement that she "understands, acknowledges and agrees" that:

a. "HDH has expended substantial time, effort, funds and expertise in acquiring and maintaining each of its Customers. HDH's close relationship with its Customers is important and valuable to the continued financial success of HDH, is based upon the time, effort, funds, and expertise HDH expends in obtaining and maintaining its Customer base, and results in the continuity and duration of these customers' relationships with HDH, except, however, solely with respect to Customers with whom Employee had an existing business relationship within the twenty four (24) month period prior to commencing his employment with HDH and provided HDH did not have such a relationship with such Customers within such period, HDH acknowledges that this subparagraph (c) shall not apply to Employee. Absent Employee's relationship with HDH, Employee would not have had contact with these Customers on behalf of HDH. Furthermore, unless Employee agrees to the terms of this Agreement, HDH will not allow Employee to further develop HDH's relationships with these Customers."

b. "HDH has invested significant time and money in developing its Confidential Information. Provided that Employee agrees to the terms of this Agreement, HDH will afford Employee access to HDH's Confidential Information to the extent that HDH deems Employee's access to Confidential Information necessary to the performance of Employee's duties. Absent Employee's relationship with HDH, Employee would not have had any access to HDH's Confidential Information. Furthermore,

unless Employee agrees to the terms of this Agreement, HDH will not permit Employee to access HDH's Confidential Information. Employee further acknowledges and understands that HDH's Confidential Information is not intended to be disclosed to the public or third parties, and Employee's understanding of this, along with any other procedures that HDH has or may introduce to further prevent disclosure of HDH's Confidential Information, are reasonably calculated steps by HDH to maintain the confidentiality of its Confidential Information."

c. "HDH's industry is highly competitive. The competitors in this industry derive significant value from confidential and trade secret information and the close relationship each competitor possesses with its Customers."

27. Finally, Spicer acknowledged that her "breach of any obligation or covenant set forth in [the Confidentiality, Non-Competition and Non-Solicitation Agreement] will have a material and adverse effect upon HDH and will cause HDH irreparable harm, and damages arising from any breach may be difficult to ascertain. Consequently, Employee acknowledges and agrees that, in addition to and without limiting any other remedy or right HDH may have, HDH, upon the satisfaction of a court of competent jurisdiction that HDH has a reasonable likelihood of success on the merits under Illinois law, shall be entitled to the entry of an immediate injunction enjoining any breach of this Agreement."

28. The Confidentiality, Non-Competition and Non-Solicitation Agreement also contained the following relevant non-solicitation and non-competition restrictions:

a. During Employee's employment with HDH and for a period of twelve (12) months following Employee's termination of employment with HDH for any reason, Employee shall not directly or indirectly, on behalf of himself or any other person, company or entity:

i. within the United States, Canada, western Europe, and such other countries and territories in which HDH conducts business within the last twelve (12) months of Employee's employment with HDH, own (other than 5% or less ownership in a publicly traded company), manage, operate, or participate in the ownership, management, operation, or control of, be employed by, or perform any services for any entity which is in competition with HDH, if Employee would be required to hold a position with responsibilities similar to any position Employee held with HDH during the last twelve (12)

months of Employee's employment with HDH or in which Employee would have responsibility for and access to confidential information similar or relevant to that which Employee had access to during the last twelve (12) months of Employee's employment with HDH;

ii. provide services to any person or entity that engages in any business that is similar to, or competitive with, HDH's business if doing so would require Employee to inevitably use or disclose HDH's Confidential Information;

iii. solicit the sale of, sell, or otherwise provide any products or services that are similar to or competitive with products or services offered or distributed by HDH, to any person, company or entity which was a HDH Customer or potential Customer for such products or services and with whom Employee had direct contact or about whom Employee learned Confidential Information regarding those products or services at any time during his employment with HDH . . . .

29. Following the termination of Spicer's HDH employment, Spicer entered into an agreement on February 23, 2026 with HDH entitled "Settlement and Release Agreement." In the Settlement and Release Agreement, Spicer:

a. "[A]cknowledge[d] and reaffirm[ed] [her] continuing obligation to keep all Confidential Information"—as that term is defined in the Confidentiality, Non-Competition and Non-Solicitation Agreement—"strictly confidential and to not disclose such documents and information to any third party in the future."

b. "[A]cknowledge[d] and reaffirm[ed] the post-employment non-competition and non-solicitation obligations and the obligations regarding the return of HDH property, and [] expressly reaffirm[ed] Spicer's intention to be bound by such post-employment obligations . . . ."

c. "[R]epresent[ed] and warrant[ed] that on or before the date she signs this Agreement," which was February 21, 2026, that she "has to the best of her knowledge permanently deleted, destroyed, or returned to HDH all of HDH's property in Spicer's possession, custody, or control (including documents and electronically stored information) received, obtained or prepared or helped to prepare in connection with Spicer's employment with HDH, including but not limited to . . . HDH client contact information, such as email addresses, phone numbers, and social media account usernames, among others . . . ."

30. The Settlement and Release Agreement states that "in any dispute or action arising from or relating to" the agreement, "the prevailing party shall be entitled to her/its reasonable attorneys' fees and costs."

31. On March 10, 2026, Spicer informed HDH that she had accepted new employment. In an email, she wrote: "I wanted to let you know that I have happily accepted a position with [a New York-based wine and spirits auction house and retailer (the "NY Auction House & Retailer")]. I will be starting after my non-compete and non-solicitation have expired." The NY Auction House & Retailer conducts worldwide fine and rare wine and spirts auctions, as well as offering retail sales.

## III. HDH Reasonably and Diligently Protects its Trade Secrets and Confidential Information

32. At all relevant times, HDH has taken the following reasonable and diligent steps (among others) to protect its trade secrets and confidential information from misappropriation.

33. As a condition of employment, HDH employees must execute confidentiality agreements, such as the Confidentiality, Non-Competition and Non-Solicitation Agreement executed by Spicer. Those agreements require HDH employees to protect HDH's trade secrets and confidential information from misappropriation or disclosure to third parties.

34. HDH reinforces its employees' contractual obligations to protect HDH's trade secrets and confidential information in the HDH Employee Handbook, which Spicer acknowledged receiving while employed by HDH. The HDH Employee Handbook contains a policy governing confidential information. That policy states, in relevant part, that "customer lists;" "proprietary lists of actual or potential clients;" and "[c]ustomer buying, selling, and collection history" are HDH's proprietary information and that HDH has "exclusive access" to that information. The HDH Employee Handbook commands employees: "**Do not discuss the**

**identities of our buyers or sellers with anyone outside of this company**." (Emphasis in original).

35. The HDH Employee Handbook further states that compliance with confidentiality policies "is required. Any violations are extremely serious and are considered grounds for termination. All Hart Davis Hart employees are required to sign confidentiality agreements to protect Hart Davis Hart's confidential information."

36. HDH also employs technological safeguards to protect its trade secrets and confidential information, such as requiring a login and password for employees to access HDH's computer network. Among other things, client-related data, such as contact information and buying/selling history, is stored in a password-protected database known as the HDH Wine Management System or in a similar, password-protected database called Netsuite.

37. Once an employee's employment is terminated, HDH cuts off the employees' ability to access HDH's email system and HDH's computer network, including but not limited to the HDH Wine Management System and Netsuite.

38. HDH conducts exit interviews with departing employees to guard against the misappropriation of HDH's trade secrets and confidential information and to remind departing employees of any post-employment restrictive covenants. For example, following the termination of Spicer's employment, HDH conducted an exit interview with Spicer. As part of that process, Spicer affirmed to HDH that she had returned all company property, including but not limited to HDH client contact information, such as email addresses, phone numbers, and social media account usernames. Additionally, HDH reminded Spicer of her non-solicitation and non-competition covenants, which she acknowledged and affirmed.

### IV. Spicer Misappropriated HDH's Trade Secrets and Confidential Information, and Breached the Confidentiality, Non-Competition and Non-Solicitation Agreement

39. While employed by HDH, Spicer was assigned a Texas-based client (the "HDH Client") as HDH's point of contact. Spicer's role was to manage, develop, and grow HDH's relationship with the HDH Client. During that time, Spicer exchanged emails with the HDH Client about wine buying opportunities, invited the HDH Client to wine tastings, and facilitated the sale of wines to the HDH Client by, among other things, learning the HDH Client's wine preferences.

40. For example, on February 22, 2024, the HDH Client told Spicer that he owned five magnums of 2008 Salon and three bottles of Krug Clos du Mesnil 1996—some of the most expensive and sought-after champagnes in the world—and that he was interested in bidding $12,000 and $22,000 on two lots at an up-coming wine auction. Spicer relied, in part, "Wow, you sure do have a great cellar! [] I'll put those bids in . . . ."

41. From 2022 to the present, the HDH Client has spent in excess of $300,000 on fine and rare wines with HDH.

42. On December 22, 2025, a mere three days after Spicer's last day of employment at HDH, another HDH employee contacted the HDH Client via email to introduce himself as the HDH Client's new contact going forward to ensure continuity between HDH and the HDH Client.

43. Then, on July 29, 2026, HDH received an email that was inadvertently sent by the HDH Client to Spicer's HDH email address. The email chain revealed that Spicer had been working with her future employer, the NY Auction House & Retailer, to sell fine and rare champagne to the HDH Client.

44. On July 29, 2026, the HDH Client wrote, likely thinking that the email would reach Spicer, not HDH: "Moriah, can you look over this list and work with [a Managing Director in the

Fine Wine Sales and Advisory division of the NY Auction House & Retailer (the "NY Auction House & Retailer Executive")]."

45. Preceding HDH Client's email was an email from the NY Auction House & Retailer Executive to the HDH Client, which read, in part:

> Dear [HDH Client],
>
> I hope this email finds you well!
>
> I received **your contact information from Moriah Spicer**.
>
> **She** asked me to reach out as she said you were looking for some **special champagnes**.
>
> **Based on what she told me**, I put a list together of what I think are the most interesting offerings currently available with [the New York Auction House]. These are all in-house and ready for immediate shipping or we could hold until temperatures are cooler.
>
> Please take a look at the list below and let me know if you have any questions.
>
> I will give you a call either later today or tomorrow to discuss.
>
> (Emphasis added).

46. The NY Auction House & Retailer Executive's email included a chart offering the HDH Client eighty different bottlings of fine and rare champagne, including six vintages of Salon and five vintages of Krug Clos du Mesnil—the same champagnes that the HDH Client and Spicer discussed in an email on February 22, 2024—ranging in price from $1,199 to $2,895 per bottle.

47. The email exchange shows that Spicer misappropriated HDH's trade secrets and confidential information by disclosing the HDH Client's contact information to the NY Auction House & Retailer, and by discussing the HDH's Client's buying preferences with the NY Auction House & Retailer, so that the New York Auction House Executive could sell fine and rare champagne to the HDH Client.

48. Spicer did not have an existing business relationship with the HDH Client within the twenty-four (24) month period prior to the commencement of Spicer's HDH employment in 2009. Accordingly, Spicer also breached the Confidentiality, Non-Competition and Non-Solicitation Agreement by disclosing the HDH Client's contact information to the NY Auction House & Retailer and discussing the HDH's Client's buying preferences with the NY Auction House & Retailer.

49. Upon HDH's receipt of the email chain described above in paragraphs 43-46, HDH contacted Spicer through her legal counsel to confront Spicer about her disclosure of the HDH Client's contact information and buying preferences to the NY Auction House & Retailer. In that correspondence, HDH asked Spicer (among other things) to identify all HDH clients whom she had introduced and/or identified to the NY Auction House & Retailer and requested Spicer to immediately cease and desist from misappropriating HDH's trade secrets and from further breaches of the Confidentiality, Non-Competition and Non-Solicitation Agreement and the Settlement and Release Agreement.

50. In response, Spicer through her legal counsel refused to provide any information about the identities of any HDH clients whom she had introduced and/or identified to the NY Auction House & Retailer. Instead, Spicer's counsel raised legal arguments against the enforceability of the confidentiality obligations contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement.

51. Upon information and belief, Spicer poses an ongoing, imminent threat to continue to misappropriate HDH's confidential, proprietary and trade secret information in connection with Spicer's relationship with the NY Auction House & Retailer. Spicer misappropriated and/or is a threat to misappropriate other trade secrets and confidential information of HDH by providing

information to the NY Auction House & Retailer about not just the HDH Client referred to in paragraphs 39-44 above, but the many other HDH clients that were assigned to Spicer and their buying preferences.

52. Finally, Spicer violated the non-solicitation covenants and the non-competition covenant in the Confidentiality, Non-Competition and Non-Solicitation Agreement by both directly and indirectly facilitating the sale of champagne to the HDH Client through the New York Auction House & Retailer.

## V. Spicer Breached the Settlement and Release Agreement

53. Spicer also breached the Settlement and Release Agreement in three ways. *First*, Spicer breached by failing to keep all Confidential Information, including information about the HDH Client, strictly confidential when she disclosed the HDH Client's contact information and the client's preferences to the New York Auction House & Retailer.

54. *Second*, Spicer's post-employment non-competition and non-solicitation obligations, as set forth in the Confidentiality, Non-Competition and Non-Solicitation Agreement, were explicitly incorporated into Settlement and Release Agreement. Spicer breached the Settlement and Release Agreement by breaching both covenants, as set forth above.

55. *Third*, Spicer failed to permanently delete, destroy, or return to HDH all of HDH's property in Spicer's possession, custody, or control that she received, obtained or prepared or helped to prepare in connection with her employment with HDH, including but not limited to . . . HDH client contact information for the HDH Client, which is also a breach of the Settlement and Release Agreement.

## JURY DEMAND

56. Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## FIRST CLAIM FOR RELIEF

**Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act**
**18 U.S.C. §§ 1832(a), 1836-37, 1839 *et seq.***

57. HDH re-alleges and incorporates by reference Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58. HDH owns certain valuable trade secrets and confidential information as described herein. This information constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3). To the extent any particular item is determined not to meet the statutory definition of trade secret, it nonetheless constitutes HDH's confidential information which is protected under the applicable contracts and laws

59. HDH's trade secrets and confidential information derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons or entities who might obtain economic value from their disclosure or use.

60. HDH has invested its time and dollars into developing relationships with its clients so that HDH can learn those clients' wine preferences and assist them in both buying and selling fine and rare wines. If the identity of HDH's clients, their wine preferences, and buying history were publicly known, competitors could quickly exploit that information to undercut HDH's efforts and financial investments designed to cultivate relationships with its clients and understand their wine preferences.

61. HDH's trade secrets and confidential information relate to products used, sold, purchased, or transported, or intended for use, sale, purchase, or transport, in interstate and foreign commerce, *to wit*, fine and rare wine.

62. At all times relevant herein, HDH has taken reasonable measures to protect the secrecy of its trade secrets and confidential information.

63. In violation of HDH's rights, Spicer misappropriated HDH's confidential, proprietary and trade secret information by acquiring, using, and disclosing them by improper means, including at least by breaching a duty to maintain secrecy of HDH's trade secrets as alleged herein, and poses an ongoing, imminent threat to continue to misappropriate HDH's confidential, proprietary and trade secret information in connection with Spicer's relationship with the NY Auction House & Retailer.

64. Spicer's misappropriation has been and continues to be intentional, knowing, and willful. Spicer has further attempted to and continues to attempt to conceal her misappropriation.

65. Through Spicer's actions described above, she has improperly converted, used and/or disclosed trade secrets of HDH, and she poses an ongoing, imminent threat to continue to use and/or disclose trade secrets of HDH in connection with her relationship with the NY Auction House & Retailer.

66. On information and belief, if Spicer is not enjoined, she will continue to misappropriate, use and/or disclose HDH's trade secret information for the benefit of the NY Auction House & Retailer and to the detriment of HDH.

67. As the direct and proximate result of Spicer's conduct, HDH's trade secrets are at risk of being disseminated and used to benefit Spicer and of the NY Auction House & Retailer. HDH has suffered competitive harm. If Spicer is not enjoined, HDH risks additional competitive harm, irreparable injury and damages.

68. At no time has HDH consented to Spicer's improper acquisition, disclosure, or use of HDH's trade secrets or confidential information.

69. Spicer knew, or had reason to know, that the trade secrets and confidential information she acquired while working for HDH was maintained confidentially by HDH, were

not generally available to the public or competitors, and were developed by HDH. The Confidentiality, Non-Competition and Non-Solicitation Agreement executed by Spicer and the HDH Employee Handbook, among other things, preclude Spicer from claiming ignorance.

70. Spicer's misappropriation was willful, entitling HDH to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

71. Spicer's misappropriation has caused and continues to cause damage to HDH, including loss of competitive advantage, diminishment of the economic value of its trade secrets and confidential information, and ongoing threat of further harm.

72. Further, in order to ensure that HDH's confidential or trade secret information is protected, HDH is entitled to expedited forensic discovery on Spicer's electronic devices, email, and cloud accounts.

**WHEREFORE**, HDH respectfully requests that the Court:

A. Enter a preliminary and permanent injunction against Spicer prohibiting her from misappropriating, using, possessing, or deriving benefit from HDH's confidential, proprietary, and trade secret information;

B. Award HDH all damages it has suffered by Spicer's misappropriation in an amount to be proven at trial;

C. Order discovery, including an expedited examination of Spicer's relevant employee computing devices, cellphones and other electronic devices, email and cloud accounts by a forensic expert to determine the manner in which Spicer has retained, accessed, used and/or disseminated any of HDH's confidential, proprietary and trade secret information;

D. Order Spicer to pay all costs associated with the forensic expert;

E. Award HDH exemplary damages in an amount sufficient to punish Spicer for her willful, wanton and malicious conduct;

F. Award HDH its attorneys' fees and costs; and

G. Grant such other relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets in Violation of the Illinois Trade Secrets Act ILCS 1065/1 et seq.**

73. HDH re-alleges and incorporates by reference Paragraphs 1 through 56 of this Complaint as though fully set forth herein. As alleged above, HDH owns and possesses certain confidential, proprietary, and trade secret information, as that term is defined under the Illinois Trade Secrets Act, 735 ILCS 1065.

74. HDH has taken reasonable measures to keep such information secret and confidential, and at all times HDH has maintained stringent security measures to preserve the secrecy of its trade secrets.

75. Due to these security measures, HDH's confidential and proprietary trade secret information is not available for others in the industry to use through any legitimate means, including to HDH's competitors in the industry.

76. HDHs' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

77. In violation of HDH's rights, Spicer misappropriated HDH's confidential, proprietary and trade secret information in the improper and unlawful manner alleged herein, and poses an ongoing, imminent threat to continue to misappropriate HDH's confidential, proprietary

and trade secret information in connection with Spicer's relationship with the NY Auction House & Retailer.

78. Spicer's misappropriation has been and continues to be intentional, knowing, and willful. Spicer has further attempted to and continues to attempt to conceal her misappropriation.

79. Through Spicer's actions described above, she has improperly converted, used and/or disclosed trade secrets of HDH, and she poses an ongoing, imminent threat to continue to use and/or disclose trade secrets of HDH in connection with her relationship with the NY Auction House & Retailer.

80. On information and belief, if Spicer is not enjoined, she will continue to misappropriate, use and/or disclose HDH's trade secret information for the benefit of the NY Auction House & Retailer and to the detriment of HDH.

81. As the direct and proximate result of Spicer's conduct, HDH's trade secrets are at risk of being disseminated and used to benefit Spicer and of the NY Auction House & Retailer. HDH has suffered competitive harm. If Spicer is not enjoined, HDH risks additional competitive harm, irreparable injury and damages.

82. Because HDH's remedies at law are inadequate, it seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information and to protect other legitimate business interests.

83. HDH operates in an extremely competitive market and will continue suffering irreparable harm absent injunctive relief.

84. As a result of Spicer's improper misappropriation and use of HDH's trade secrets, Spicer has violated the Illinois Trade Secrets Act.

85. HDH has been damaged by all of the foregoing and is further entitled to an award of exemplary damages and attorney's fees.

86. Further, in order to ensure that none of the confidential or trade secret information has been disseminated or retained by Spicer, HDH is entitled to expedited forensic discovery on Spicer's electronic devices, email, and cloud accounts.

**WHEREFORE**, HDH respectfully requests that the Court:

A. Enter a preliminary and permanent injunction against Spicer prohibiting her from misappropriating, using, possessing, or deriving benefit from HDH's confidential, proprietary, and trade secret information;

B. Award HDH all damages it has suffered by Spicer's misappropriation in an amount to be proven at trial;

C. Order discovery, including an examination of Spicer's relevant computing devices, cellphones and other electronic devices, email and cloud accounts by a forensic expert to determine the manner in which Spicer has retained, accessed, used and/or disseminated any of HDH's confidential, proprietary and trade secret information;

D. Order Spicer to pay all costs associated with the forensic expert;

E. Award HDH exemplary damages in an amount sufficient to punish Spicer for her willful, wanton and malicious conduct;

F. Award HDH its attorneys' fees and costs; and

G. Grant such other relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract – Confidentiality, Non-Completion and Non-Solicitation Agreement**

87. HDH re-alleges and incorporates by reference Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

88. As part of the Confidentiality, Non-Competition and Non-Solicitation Agreement executed by Spicer, she is subject to valid and enforceable covenants providing that, inter alia, she cannot, for one year following termination of her employment with HDH, do any of the following on behalf of herself or any other person or entity:

> (i) within the United States, Canada, western Europe, and such other countries and territories in which HDH conducts business within the last twelve (12) months of [Spicer's] employment with HDH, own (other than 5% or less ownership in a publicly traded company), manage, operate, or participate in the ownership, management, operation, or control of, be employed by, or perform any services for any entity which is in competition with HDH, if [Spicer] would be required to hold a position with responsibilities similar to any position [Spicer] held with HDH during the last twelve (12) months of [Spicer's] employment with HDH or in which [Spicer] would have responsibility for and access to confidential information similar or relevant to that which [Spicer] had access to during the last twelve (12) months of [Spicer 's] employment with HDH;
>
> (ii) provide services to any person or entity that engages in any business that is similar to, or competitive with, HDH's business if doing so would require [Spicer] to inevitably use or disclose HDH's Confidential Information;
>
> (iii) solicit the sale of, sell, or otherwise provide any products or services that are similar to or competitive with products or services offered or distributed by HDH, to any person, company or entity which was a HDH Customer or potential Customer for such products or services and with whom [Spicer] had direct contact or about whom [Spicer] learned Confidential Information regarding those products or services at any time during [her] employment with HDH . . . .

89. As part of the Confidentiality, Non-Competition and Non-Solicitation Agreement executed by Spicer, she is further subject to a valid and enforceable covenant providing that, inter alia, (a) she cannot directly or indirectly, utilize for any purpose other than for a legitimate business purpose solely on behalf of HDH, or directly or indirectly, disclose to anyone outside of HDH,

either during or after Spicer's employment or relationship with HDH ends, HDH's Confidential Information, as long as such matters remain Confidential Information; and (b) she must immediately return all of HDH's property, including HDH's Confidential Information, documents, materials, or copies in any media, including paper or electronic form, and shall not retain in Spicer's possession after her termination any property, including any property containing HDH's Confidential Information.

90. Spicer received adequate and sufficient consideration for entering into the covenants set forth in the Confidentiality, Non-Competition and Non-Solicitation Agreement.

91. HDH has fulfilled all of its obligations under the Confidentiality, Non-Competition and Non-Solicitation Agreement.

92. Spicer has breached the covenants contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement by, among other things, providing the HDH Client's contact information to the NY Auction House & Retailer, and by discussing the HDH's Client's buying preferences with the NY Auction House & Retailer, so that the New York Auction House Executive could sell fine and rare champagne to the HDH Client.

93. Spicer has also breached the covenants contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement by, among other things, retaining, disclosing to a third party, and utilizing for a purpose other than for a legitimate business purpose solely on behalf of HDH, the proprietary and confidential business information of HDH that Spicer gained while in the employment of HDH.

94. By the aforesaid acts, Spicer has violated the explicit terms of her covenants and the implied covenant of good faith and fair dealing contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement.

95. Spicer's breach and continuing breach of her covenants has caused and will cause HDH immediate and irreparable harm for which there is no adequate remedy at law.

**WHEREFORE**, HDH respectfully requests that the Court:

A. Enter a preliminary and permanent injunction against Spicer, enforcing the covenants, and (1) prohibiting Spicer for a period of one year from the date of her termination of employment from HDH (which period the Court should order be extended by the length of time during which Spicer was in breach) from doing any of the following: (a) manage, operate, or participate in the ownership, management, operation, or control of, be employed by, or perform any services for any entity which is in competition with HDH, if Spicer would be required to hold a position with responsibilities similar to any position Spicer held with HDH during the last twelve (12) months of Spicer's employment with HDH or in which Spicer would have responsibility for and access to confidential information similar or relevant to that which Spicer had access to during the last twelve (12) months of Spicer's employment with HDH; (b) provide services to any person or entity that engages in any business that is similar to, or competitive with, HDH's business if doing so would require Spicer to inevitably use or disclose HDH's Confidential Information; and (c) solicit the sale of, sell, or otherwise provide any products or services that are similar to or competitive with products or services offered or distributed by HDH, to any person, company or entity which was a HDH customer or potential customer for such products or services and with whom Spicer had direct contact or about

whom Spicer learned Confidential Information regarding those products or services at any time during her employment with HDH and (2) for as long as HDH's proprietary and business confidential information remains confidential to HDH, that Spicer be prohibited from possessing, using, or disclosing HDH's proprietary and business confidential information;

B. Order an accounting of all profits, commissions, or other compensation or gain derived as a result of Spicer's actions which violate her contractual duties, and enter a judgment against Spicer in that amount;

C. Enter judgment in favor of HDH, and against Spicer, finding that Spicer breached the covenants contained in the Confidentiality, Non-Competition and Non-Solicitation Agreement

D. Award HDH such damages as may be proven at trial;

E. Award HDH its costs; and

F. Award HDH such other and further relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### Breach of Contract – Settlement and Release Agreement

96. HDH re-alleges and incorporates by reference Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

97. HDH and Spicer entered into the Settlement and Release Agreement, which is a valid, enforceable contract supported by adequate consideration.

98. HDH performed its obligations under the Settlement and Release Agreement.

99. Spicer materially breached the Settlement and Release Agreement by:

a. Failing to keep all Confidential Information, including information about the HDH Client, strictly confidential by disclosing information regarding the HDH client to the New York Auction House & Retailer;

b. Breaching her post-employment non-competition and non-solicitation obligations with the New York Auction House & Retailer and the HDH Client; and

c. Failing to permanently delete, destroy, or return to HDH all of HDH's property in Spicer's possession, custody, or control (including documents and electronically stored information) received, obtained or prepared or helped to prepare in connection with Spicer's employment with HDH, including but not limited to . . . HDH client contact information, for the HDH Client.

100. Spicer's material breaches of the Settlement and Release Agreement have injured HDH.

101. HDH is also contractually entitled to reimbursement of its reasonable attorneys' fees and costs.

**WHEREFORE**, HDH respectfully requests that the Court:

A. Enter judgment in favor of HDH, and against Spicer, finding that Spicer breached the Settlement and Release Agreement;

B. Award HDH such damages as may be proven at trial;

C. Award HDH its reasonable attorney's fees and costs; and

D. Award HDH such other and further relief as the Court deems just and proper.

Dated: August 25, 2026

Respectfully submitted,

By: *<u>/s/ Steven L. Brenneman</u>*
Steven L. Brenneman

Steven L. Brenneman (IL ARDC #6190736)
**Fox, Swibel, Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, IL 60606
(312) 224-1206 - Telephone
sbrenneman@foxswibel.com

**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**

150 West Flagler Street, Suite 2200
Miami, Florida 33130
Phone: (305) 789-3455
Fax: (305) 789-3395
By: *<u>/s/ Jason P. Hernandez</u>* (*pro hac vice* application forthcoming)
Jason P. Hernandez
Fla. Bar No. 018598
jhernandez@stearnsweaver.com